**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: January 2 2019**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | Case No. 17-52446 |
| ) | |
| Kathryn G. Taus, ) | Chapter 7 |
| ) | |
| Debtor. ) | Adv. Pro. No. 17-05080 |
| ) | |
| Dan Guardo Construction, Inc. ) | Judge John P. Gustafson |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Kathryn G. Taus, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF DECISION AND ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This Adversary Proceeding comes before the court on Plaintiff Dan Guardo Construction, Inc.'s ("Plaintiff") Motion for Summary Judgment ("Motion"). [Adv. Doc. 57].[1] Defendant-Debtor Kathryn G. Taus ("Defendant-Debtor") filed a Response [Adv. Doc. #64] and Plaintiff

---

[1] The court will refer to the docket in Defendant-Debtor's Chapter 13 case via [Doc.__] and to the docket in this adversary proceeding via [Adv. Doc.__].

filed a Reply to Defendant-Debtor's Response. [Adv. Doc. #65]. In its Motion, Plaintiff seeks an order of specific performance mandating that Defendant-Debtor convey her and her husband's interest in real property pursuant to a Purchase Agreement ("Purchase Agreement") entered into by the parties on July 1, 2013, and a Mutual Release and Settlement ("Mutual Release") entered into by the parties in late March of 2015. [Adv. Doc. #57, p. 5; Adv. Doc. #65-2]. In her Response, Defendant-Debtor argues that genuine issues of material fact surrounding the Purchase Agreement/Mutual Release and the status of the parties preclude entry of an order for specific performance. [Adv. Doc. #64, p. 3]. Defendant-Debtor argues that these issues require that the court hold a trial on the Complaint. [*Id.*].

This Adversary Proceeding was transferred to this Western Division court on September 20, 2018 from its Eastern Division counterpart. [Adv. Doc. #61]. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334,[2] 157(a), and General Order 2012-7 of the United States District Court for the Northern District of Ohio.

Because Plaintiff has demonstrated that it is able, ready, and willing to receive the real property in question, and that the equities of the case weigh in Plaintiff's favor as contemplated by the test for specific performance under Ohio law, Plaintiff's Motion for Summary Judgment will be granted.

## FACTUAL BACKGROUND

On July 1, 2013, Plaintiff and Defendant-Debtor[3] entered into a Purchase Agreement

---

2/ 28 U.S.C. §1334(b) grants district courts (and bankruptcy courts via local order of reference) "related to" bankruptcy jurisdiction over actions where "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *In re Greektown Holdings, LLC*, 728 F.3d 567, 577 (6th Cir. 2013)(quotation omitted). Thus, core or non-core, the court is satisfied that it has jurisdiction over this specific performance adversary proceeding because determining whether Defendant-Debtor must convey the Property to Plaintiff affects both parties' rights in property and significantly "impacts upon the handling and administration of" Defendant-Debtor's Chapter 13 estate.

As for the issue of party consent under 28 U.S.C. §157(c)(2), Plaintiff's Amended Complaint affirmatively stated that Plaintiff consents to this court's exercise of jurisdiction. [Adv. Doc. #35, pp. 2-3]. The Amended Complaint also averred that Defendant-Debtor consents as well [*Id.*], and Defendant-Debtor's Answer to the Amended Complaint admits the same. [Adv. Doc. #37, p. 1]. Thus, the court finds that both parties to this action have consented to this court's exercise of (at least) "related to" jurisdiction over this adversary proceeding, as required by 28 U.S.C. §157(c)(2).

3/ Defendant-Debtor and her non-debtor husband jointly took part in the Purchase Agreement, but for purposes of this decision, the court will refer only to Defendant-Debtor. Further, because Defendant-Debtor did not list her husband as a co-debtor relative to the Property [Doc. #62, pp. 21-22] and the Property appears to be commercial in nature, the court will assume without deciding that there are no issues with regards to a potential co-debtor stay.

("Purchase Agreement") through which Defendant-Debtor agreed to convey and Plaintiff agreed to purchase real property located at 31 E. Lods Street, Akron, Ohio ("the Property"). [Adv. Doc. #57, p. 1; Adv. Doc. #58, p. 1]. The parties executed two addendums to the Purchase Agreement that extended the closing date to October 4, 2013. [Adv. Doc. #57, pp. 5-6]. The parties agreed that Plaintiff would take pre-closure possession of the real property on November 1, 2013 in exchange for Plaintiff's payment of a $2,500.00 pre-possession fee. [Adv. Doc. #59, p. 1; Adv. Doc. #64, p. 18].

Plaintiff's president and owner asserts that the building had been unoccupied for a considerable amount of time and that, upon taking possession, he had to perform maintenance, cleaning, and make necessary improvements that cost a total of $65,491.00.[4] [Adv. Doc. #58, p. 2; Adv. Doc. #65-3, p. 2]. Defendant-Debtor alleges that Plaintiff's improvements actually lowered the value of the property and were unnecessary. [Adv. Doc. #64, p. 2].

Two events are important to the specific performance issue before the court: (1) the Summit County Court of Common Pleas' trial/decision ("State Court Action" or "State Court Decision"), and (2) the parties' entry into a Mutual Release and Settlement ("Mutual Release").

**A. The State Court Decision**

Due to an outstanding IRS tax lien issue, the specifics of which the parties dispute,[5] a closing on the Purchase Agreement did not occur. Defendant-Debtor subsequently initiated the State Court Action against Plaintiff, alleging that Plaintiff was in breach of the Purchase Agreement and should be evicted from the Property. After a bench trial that took place on March 25, 2015, a Summit County magistrate issued a decision that found Defendant-Debtor in breach of the Purchase Agreement. [Adv. Doc. #57].

Specifically, the State Court Decision included the following findings of fact and conclusions of law that are relevant to the specific performance issue before this court: (1) the Purchase Agreement and its two addendums constituted a valid contract through which Defendant-Debtor agreed to convey to Plaintiff the Property [Adv. Doc. #57, pp. 5, 9-10]; (2) by failing to close on the conveyance by October 4, 2013, Defendant-Debtor breached the Purchase Agreement

---

4/ In its Order Granting Defendant's Motion for Rent, the court credited Plaintiff's description of the state of the Property when Plaintiff took possession. [Adv. Doc. #33, p. 3].

5/ The details of the dispute underlying the IRS tax lien are not relevant to the specific performance issue before the court.

[*Id.*, p. 10]; (3) Defendant-Debtor's breach was the cause of the lengthy delay in the conveyance and Plaintiff thus did not owe Defendant-Debtor any rent related to its early possession of the Property [*Id.*, pp. 10-11] ; and (4) Defendant-Debtor and Plaintiff neither reached an agreement that superseded the Purchase Agreement, nor did either party act to terminate it. [*Id.*, p. 10]. Additionally, the State Court Decision noted that the parties had entered into the Mutual Release prior to trial and held that the State Court Decision thus only dealt with the time period between the Defendant-Debtor's initial breach on November 1, 2013 and the date of trial (March 25, 2015). [*Id.*, p. 9].

The Summit County Court of Common Pleas adopted the magistrate's State Court Decision without objection or alteration. [Adv. Doc. #65-1].

**B. The Mutual Release**

Shortly before the State Court Action went to trial in March of 2015, the parties entered into a Mutual Release that outlined their agreement to continue working towards a closing pursuant to the terms of the Purchase Agreement. The Mutual Release provided that: (1) Defendant-Debtor would place the executed deed to the Property in escrow for a period of 120 days; (2) Plaintiff would pay Defendant-Debtor a purchase price of $185,000.00 within 120 days of the Mutual Release's execution; (3) Plaintiff would pay Defendant-Debtor two installments of rent of $1,500.00 on April 1, 2015, and May 1, 2015; (4) Plaintiff would only be responsible for payment of rent accruing from May 1, 2015 onwards if the closing did not occur due to Plaintiff's fault. [Adv. Doc. #65-2, pp. 2-3].

The parties do not appear to dispute that Plaintiff paid Defendant-Debtor the rent owed under the Mutual Release. [Adv. Doc. #65-3, p. 4]. However, Defendant-Debtor did not place the executed deed to the Property in escrow within the 120 day period contemplated by the Mutual Release. [*Id.*; Adv. Doc. #64, p. 18]. Plaintiff avers that Defendant-Debtor did not place the executed deed in escrow because Defendant-Debtor objected to use of the title company's standard title guarantee form. [Adv. Doc. #65-3, p. 4]. Plaintiff provided an affidavit from the title company's office manager in support. [Adv. Doc. #65-4]. Defendant-Debtor, on the other hand, avers that the deed was not placed in escrow because "it took until November to get an agreement with IRS…." [Adv. Doc. #64, p. 18]. Notably, the Mutual Release makes no mention of an IRS agreement contingency, nor does it mention a contingency related to title company issues. [Adv. Doc. #65-2].

4

Although the parties switched title companies and Plaintiff agreed to pay Defendant-Debtor additional rent during the delay, the executed deed to the property was never placed in escrow by Defendant-Debtor. [Adv. Doc. #65-3, pp. 4-5].

C.  The Bankruptcy Case and Adversary Proceeding

Defendant-Debtor filed the underlying Chapter 13 case on October 12, 2017 [Doc. #1], and amended her Schedules to include Plaintiff as an unsecured creditor on November 7, 2017. [Doc. #14, p. 3]. While the original Petition did not list the Property, Defendant-Debtor amended her Schedule A/B to include it on May 10, 2018. [Doc. #62, p. 3]. On her amended Schedule A/B, Defendant-Debtor valued the Property at $185,000.00 and listed it as "Commercial Property."[6] [*Id.*].

Defendant-Debtor filed a Third Amended Chapter 13 Plan on May 14, 2018, calling for monthly payments to the trustee of $450.00 and two lumpsum payments of $135,000.00 and $150,000.00, to be made at 12 and 48 months into the Plan respectively. [Doc. #67, p. 6]. Plaintiff objected to Defendant-Debtor's Third Amended Chapter 13 Plan on June 6, 2018, arguing that it was not proposed in good faith due to the uncertainty created by the unresolved dispute underlying the failed conveyance of the Property. [Doc. #82]. The court sustained Plaintiff's Objection on November 2, 2018 [Doc. #105], and Defendant-Debtor's Chapter 13 case remains without a confirmed plan.

Plaintiff initiated this adversary proceeding on November 15, 2017 [Adv. Doc. #1], and filed an Amended Complaint on May 24, 2018. [Adv. Doc. #35]. Defendant-Debtor filed an Amended Motion for Rent on January 8, 2018, arguing that Plaintiff owed her rent for occupying the Property prior to its formal conveyance. [Doc. #14]. The court granted Defendant-Debtor's Amended Motion for Rent on May 10, 2018, finding that, given the condition of the property, temporary rent payments of $1,000.00 were warranted. [Doc. #33].

After all defendants except for Defendant-Debtor were dismissed from the adversary case on August 13, 2018 [Adv. Doc. #54], Plaintiff filed its Motion for Summary Judgment on August 28, 2018. [Adv. Doc. #57]. In support, Plaintiff attached a copy of the magistrate's State Court

---

6/  Defendant-Debtor appears to have taken contradictory positions as to whether the Property and its related debt are commercial or consumer in nature. In an amendment to Schedule E/F, Defendant-Debtor lists a debt owed Plaintiff as "consumer debt" [Doc. #14, p. 3], yet in Schedule A/B, Defendant-Debtor lists the Property as "Commercial Property." [Doc. #62, p. 3]. In a prior Chapter 13 case, Defendant-Debtor also listed the Property as "Commercial Property." [Case No. 16-51556, Doc. #1, p. 11]. Despite this inconsistency, the evidence before the court appears to indicate that the Property is commercial in nature.

Decision and filed affidavits from its president/owner and its company controller. [Adv. Doc. ##58, 59].

This adversary proceeding was then reassigned to the undersigned judge on September 20, 2018. [Adv. Doc. #61]. Defendant-Debtor filed a Response that included various emails and an affidavit from Defendant-Debtor. [Adv. Doc. #64]. In her Response, Defendant-Debtor argues that a trial is necessary because material facts are in dispute regarding whether: (1) Plaintiff has conducted itself in bad faith; (2) there was a new contract after the IRS liens had been resolved; (3) there was a prepossession agreement; (4) Plaintiff was ever ready, willing, and able to purchase the Property; (5) Plaintiff had financing to purchase the Property; (6) Plaintiff decreased the value of the Property with its improvements; (7) Plaintiff is responsible for outstanding rent. [*Id.*, p. 3].

Plaintiff then filed a Reply [Adv. Doc. #65], and in support, Plaintiff provided a copy of the Summit County Court of Common Pleas' adoption of the magistrate's State Court Decision [Adv. Doc. #65-1], the Mutual Release [Adv. Doc. #65-2], numerous transactional documents outlining Plaintiff's conveyance preparations [Adv. Doc. #65-3, pp. 8-24] and the affidavits of Plaintiff's president [*Id.*, pp. 1-7], both title companies [Adv. Doc. ##65-4, 65-5], and Plaintiff's company controller. [Adv. Doc. #65-6]. In its Reply, Plaintiff alleges that Defendant-Debtor's arguments are unavailing because many have already been addressed by the State Court Decision and the terms of the Mutual Release. [Adv. Doc. #65, p. 1]. Further, Plaintiff argues that Defendant-Debtor remains in breach of the Mutual Release and that an order of specific performance is the proper way to end this dispute. [*Id.*, p. 6].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The moving party can discharge its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact, or by showing that there is no such issue by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554.

Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials ... without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

**IIA. Specific Performance Under Ohio Law**

Plaintiff seeks an order of specific performance compelling Defendant-Debtor's conveyance of the real property described in the Purchase Agreement and Mutual Release. Because the Purchase Agreement and Mutual Release are contracts formed under Ohio law,[7] this bankruptcy court must apply the contract "law of the state's highest court." *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995); *see also*, *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

---

7/ Neither the Purchase Agreement nor the Mutual Release contain express choice-of-law provisions. Nevertheless, because Plaintiff is an Ohio corporation [Adv. Doc. #65-2, p. 1] and Defendant-Debtor is an Ohio resident [Doc. #1, p. 2], the property at issue is located in Ohio [Adv. Doc. #65-2, p. 1], and the parties appear to have contracted solely in the state of Ohio, the court finds that the Purchase Agreement and the Mutual Release are contracts governed by Ohio law. *See*, Restatement (Second) of Conflict of Laws §188 (1971); *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 490-91, 747 N.E.2d 206, 220 (Ohio 2001)(noting that Ohio courts have adopted the Restatement of Conflicts' "significant relationship" test for contract choice-of-law questions, a test that looks to, among other things, the location of the contract's subject matter, the residence of the contracting parties, and the place of contracting).

17-05080-jpg    Doc 66    FILED 01/02/19    ENTERED 01/02/19 16:20:32    Page 7 of 14

However, if "the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from 'all relevant data.'" *Garden City*, 55 F.3d at 1130 (citations omitted); *Baumgart v. Alam (In re Alam)*, 359 B.R. 142, 147 (6th Cir. BAP 2006); *Owensby v. City of Cincinnati*, 385 F.Supp.2d 626, 631 (S.D. Ohio 2004)(listing what may be analyzed as "relevant data", including lower state court opinions, federal court decisions, etc.). In *Garden City*, the Sixth Circuit Court of Appeals quoted the following passage on "relevant data":

> [W]e are mindful that an intermediate appellate court's judgment that announces a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Garden City*, 55 F.3d at 1130 (quotation omitted).

Under Ohio law, courts apply a fact-specific, equity-focused test when determining whether specific performance of a contract is warranted. *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 274-75, 473 N.E.2d 798, 800 (Ohio 1984). In other words, "[s]pecific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case." *Id.* (quoting *Spengler v. Sonnenberg*, 88 Ohio St. 192, 203, 102 N.E. 737 (Ohio 1919)).

Generally speaking, specific performance is the customary remedy for contract disputes involving real property. *See*, *Broad Street Energy Co. v. Endeavor Ohio, LLC*, 975 F.Supp.2d 878, 889 (S.D. Ohio 2013). As explained by an Ohio Court of Appeals:

> Generally where the subject matter of the contract is unique, there can be no adequate remedy at law. Any specific piece of land is unique, thus, there can be no adequate remedy at law. This rule applies to both vendee and vendor claimants. "The purchaser in a contract for a conveyance of land has a right to specific performance because of the unique character of realty…."

*Ruhlen v. Columbus First Realty Co.*, 1985 WL 9146, at **6-7, 1985 Ohio App. LEXIS 7798, at **6-7 (Ohio Ct.App. May 17, 1985)(quoting 40 Ohio Jurisprudence 2d (1961) 571, Specific Performance, §k6); *see also*, 84 Ohio Jurisprudence 3d (2018), Specific Performance §83 ("In general, a contract to purchase real estate may be enforced by specific performance when the promissor's failure to perform constitutes a breach of contract…. This is due to the fact that the remedy at law is ordinarily assumed to be inadequate in such cases…."); *Sorrell v. Micomonaco*, 89 N.E.3d 21, 29-30 (Ohio Ct.App. 2017)("Contracts involving interests in land…generally are specifically enforced because of the clear inadequacy of damages at law for breach of

contract.")(quotation omitted).

## IIB. Issue Preclusion Under Ohio Law

Plaintiff argues that many of the issues raised by Defendant-Debtor in opposition to its pursuit of specific performance have already been decided by the Summit County State Court Decision. Further, the State Court Decision made determinations that relate to many of the equitable considerations underlying the test for specific performance under Ohio law. *See*, *Sandusky Properties*, 15 Ohio St.3d at 274-75, 473 N.E.2d at 800. Thus, the court must determine whether the State Court Decision should be given preclusive effect in these proceedings pursuant to the doctrine of issue preclusion.

Under 28 U.S.C. §1738, "[f]ederal courts must give 'the same full faith and credit' to a state court judgment as the judgment would be accorded under the laws of the state in which it was entered." *Dardinger v. Dardinger* (*In re Dardinger*), 566 B.R. 481, 494 (Bankr. S.D. Ohio 2017)(citing *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 703 (6th Cir. 1999)). Thus, in order to determine whether to give preclusive effect to the State Court Decision, §1738 requires that this court look to how Ohio courts apply the doctrine of issue preclusion. *Id.* (quoting *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997)(quotation omitted)).

Under Ohio law, the doctrine of issue preclusion has three elements:

> Collateral Estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior to action.

*Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (Ohio 1994)(citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (Ohio 1969)); *see also*, Mesa Underwriters Specialty Insurance Co. v. Secret's Gentleman's Club, __Fed.Appx.__, 2018 WL 5004919, at *8, 2018 U.S. App. LEXIS 28995, at *25 (6th Cir. 2018)(quoting the *Thompson* test for issue preclusion under Ohio law).

The party invoking the doctrine of issue preclusion has the burden of establishing its application by a preponderance of the evidence. *A Packaging Serv. Co. v. Siml* (*In re Siml*), 261 B.R. 419, 422 (Bankr. N.D. Ohio 2001)(citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 279, 112 L.Ed.2d 755 (1991)).

In this case, the court finds that all three *Thompson* elements are met as to the State Court Decision. Thus, the court will give preclusive effect to the State Court Decision's findings in

9

determining whether to grant Plaintiff's request for an order of specific performance.

In terms of the first *Thompson* element, the court finds that many of the issues pertinent to an order of specific performance were actually and directly litigated in the State Court Decision. In finding that Defendant-Debtor was at fault for failing to close on the Purchase Agreement, the State Court Decision set forth the circumstances underlying the conduct of the parties and held that Defendant-Debtor, not Plaintiff, had breached the Purchase Agreement. [Adv. Doc. #57, pp. 8-10]. Implicit in this finding are the same equitable and factual concerns that govern the Ohio test for specific performance. *See*, *Sandusky Properties*, 15 Ohio St.3d at 274-75, 473 N.E.2d at 800. Further, the absence of any mention of Plaintiff's alleged bad faith or inequitable conduct in the State Court Decision weighs heavily in favor of granting Plaintiff's request for specific performance. Thus, the court finds that many of the equitable considerations underpinning the Ohio test for specific performance were actually and directly litigated in the State Court Decision, satisfying the second *Thompson* element.

As for the second *Thompson* element, the court finds that the Summit County Court of Common Pleas, a court of competent jurisdiction, passed upon and determined the issues underlying Plaintiff's request for specific performance. After the magistrate held a bench trial that Defendant-Debtor actively participated in through counsel [Adv. Doc. #57, p. 4], the Summit County Court of Common Pleas adopted, without alteration or objection [Adv. Doc. #65-1, p. 1], the magistrate's decision holding that Defendant-Debtor breached the Purchase Agreement by failing to complete the conveyance of the Property on October 4, 2013. [Adv. Doc. #57, p. 10]. There was no default by either party and the Summit County state court granted judgment to Plaintiff, stating "[t]his is a final appealable order." [Adv. Doc. #65-1, pp. 1-2]; *see*, *State ex rel. Curran v. Brookes*, 142 Ohio St. 107, 110, 50 N.E.2d 995, 998 (Ohio 1943)(A final judgment is "one which determines the merits of the case and makes an end to it."). Thus, the court finds that the second *Thompson* element is satisfied.

Third, the State Court Decision and the current adversary proceeding both involve Defendant-Debtor and Plaintiff. Thus, the party against whom issue preclusion is sought - the Defendant-Debtor - was a party to the State Court Action, satisfying the third element of the *Thompson* test.

In sum, the court finds that all three *Thompson* elements have been met. Therefore, the court will give preclusive effect to the State Court Decision. Accordingly, Defendant-Debtor is

estopped from relitigating any of the issues decided, directly or indirectly, by the State Court Decision, be they allegations of Plaintiff's bad faith, Plaintiff's being able, ready, and willing to close on the conveyance of the property, or any other issue that pertains to the time period between the original breach of the Purchase Agreement and the parties' entry into the Mutual Release entered into on the eve of the trial on the State Court Action.

### III. Defendant-Debtor's Breach of the Mutual Release

Having addressed the equitable circumstances regarding the time period between Defendant-Debtor's breach of the Purchase Agreement and the parties' entry into the Mutual Release, the court turns to the issue of who breached the Mutual Release and how that impacts Plaintiff's request for an order of specific performance. Even when viewed in the light most favorable to Defendant-Debtor, the evidence and arguments presented support the court's finding that Defendant-Debtor breached the Mutual Release, a valid and enforceable contract, by failing to place the executed deed into escrow in a timely manner. Further, the court finds that equity continues to favor Plaintiff, and that Defendant-Debtor's remaining arguments in opposition to an order for specific performance are unpersuasive.

First, the court finds that the Mutual Release, a settlement agreement, is a binding and enforceable bilateral contract under Ohio law. *See*, *Continental W. Condo. Unit Owners Ass'n v. Howard E. Ferguson, Inc.*, 74 Ohio St. 3d 501, 502, 660 N.E.2d 431, 432 (Ohio 1996)("It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party.")(citations omitted); *Forry, Inc. v. Neundorfer, Inc.*, 1987 WL 177542, at *6, 1987 U.S. Dist. LEXIS 3320, at *21 (N.D. Ohio April 9, 1987)("It is necessary to read the mutual release, *like any contract*, as a whole instrument.")(emphasis added), *aff'd*, 837 F.2d 259 (6th Cir. 1988).

> As the Supreme Court of Ohio has stated:
>
> A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.

*Kostelnik v. Helper*, 96 Ohio St.3d 1, 3-4, 770 N.E.2d 58, 61 (Ohio 2002)(quotation and citations omitted); *see also*, *Rayess v. Educ. Comm. For Foreign Med. Graduates*, 134 Ohio St.3d 509, 513,

983 N.E.2d 1267, 1271-72 (Ohio 2012); *Howard E. Ferguson, Inc.*, 74 Ohio St. 3d at 502, 660 N.E.2d at 432.

Here, the consideration was the parties' mutual promises to perform. Defendant-Debtor promised to place the executed deed to the Property in escrow. Plaintiff promised to pay two installments of rent, dismiss its State Court Action claims for specific performance and compensation for improvements made to the property, and make preparations to pay the asking price and close on the deal. [Adv. Doc. #65-2, pp. 1-2]. Additionally, the Mutual Release contains a clear manifestation of mutual assent, acceptance, and a meeting of the minds in that both Plaintiff's president and Defendant-Debtor signed the document. [*Id.*, p. 3]. Accordingly, the court finds that the Mutual Release is a binding, enforceable bilateral contract under Ohio law.

The court also finds that the terms of the Mutual Release were (and are) unambiguous,[8] and that none of Defendant-Debtor's arguments for alternative interpretations are availing. Per the Mutual Release, so long as Plaintiff paid Defendant-Debtor two installments of rent, dismissed its specific performance/compensation claims before the Summit County state court, and prepared for closing, Defendant-Debtor was obligated to comply with the terms of the agreement and place the executed deed into escrow. [Adv. Doc. #65-2]. The evidence before the court indicates that while Plaintiff paid Defendant-Debtor the rent due [Adv. Doc. #65-3, p. 4], dismissed its specific performance/compensation claims [Adv. Doc. #57, p. 9], and prepared to close on the transaction [Adv. Doc. #65-3, pp. 8-24], Defendant-Debtor failed to uphold her end of the bargain. Thus, the court finds that Defendant-Debtor breached the Mutual Release by failing to place the executed deed in escrow. *See*, *Turoczy Bonding Co. v. Mitchell*, ___N.E.3d___, 2018 WL 3815057, at *3, 2018 Ohio App. LEXIS 3467, at *10 (Ohio Ct. App. 2018)("Once there is such a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind.")(citation omitted).

The fact that the Mutual Release makes no mention of any contingencies relating to IRS negotiations undercuts Defendant-Debtor's argument that the IRS tax lien issues justified her

---

8/ *See*, *Sunoco Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 404, 953 N.E.2d 285, 292 (Ohio 2011)("When confronted with an issue of contract interpretation, [the court's] role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, [the court] will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.").

failure to place the deed into escrow. After all, had the parties intended that their agreement be subject to those contingent terms, they could have included language to that effect in the Mutual Release. *See*, *Toledo Edison Co.*, 129 Ohio St.3d at 404, 953 N.E.2d at 292. The same can be said regarding Defendant-Debtor's pre-possession agreement and rent obligation arguments. Not only had those items already been determined by the State Court Decision, their absence from the Mutual Release makes them irrelevant in terms of establishing which party breached the agreement. Accordingly, Defendant-Debtor's arguments that seek to excuse her failure to perform under the Mutual Release must be rejected because they are contradicted by the plain language of the contract. *See*, *Toledo Edison Co.*, 129 Ohio St.3d at 404, 953 N.E.2d at 292.

While Ohio law recognizes specific performance as a remedy to be had as of right in the context of real estate transactions, "[a] party seeking specific performance…must show performance on his part pursuant to the terms of the contract." *White v. Nemastil*, 29 Ohio App.3d 1, 4, 503 N.E.2d 189, 194 (Ohio Ct.App 1985)(citing *George Wiedemann Brewing Co. Maxwell*, 78 Ohio St. 54, 84 N.E. 595 (Ohio 1908)); *see also*, *United States Postal Serv. v. Americo Fisco Revocable Trust*, 2016 WL 4565470, at *5, 2016 U.S. Dist. LEXIS 117478, at *13 (N.D. Ohio August 31, 2016). In other words, "[i]n order to be entitled to specific performance, the plaintiff generally must allege and show that [it] is able, ready, and willing to comply with [its] part of the contract." 81A C.J.S. Specific Performance § 122.

Here, the court finds that Plaintiff has carried its burden of establishing that it performed under the Mutual Release, meeting that requirement for the entry of an order for specific performance. Per Plaintiff's credible evidence, it paid Defendant-Debtor the two installments of rent due [Adv. Doc. #65-3, p. 4], dismissed its claims for specific performance and compensation that were before the Summit County state court [Adv. Doc. #57, p. 9], and made the necessary preparations for closing on the conveyance. [Adv. Doc. #65-3, pp. 8-24].

Defendant-Debtor's assertion that Plaintiff was not, and continues to not be able, ready, and willing to close on the transaction, is refuted by Plaintiff's abundant evidence to the contrary. Plaintiff provided sworn affidavits from its president and controller, as well as numerous transactional documents outlining Plaintiff's conveyance preparations. [Adv. Doc. ##65-3, 65-6, 59]. Aside from irrelevant emails that detail the financial fallout resulting from Defendant-Debtor's repeated failures to close, there is no evidence to support Defendant-Debtor's argument that Plaintiff has acted in bad faith or is somehow unable to pay the contractually agreed selling

13

price and receive the Property.

In conclusion, both parties have expended a great deal of resources during the course of this prolonged transaction, and given the unique nature of real estate, *see*, *Ruhlen*, 1985 WL 9146, at *6-7, 1985 Ohio App. LEXIS 7798, at **6-7, and Plaintiff's evidence supporting the fact that it remains able, ready, and willing to close on the conveyance of the Property, the court finds that equity requires that an order of specific performance be issued.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Adv. Doc. #57] be, and hereby is, **GRANTED**. A separate judgment shall issue consistent with this memorandum.